**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services, Respondent,

v.

Ptia Patterson and Andre Rice, Defendants,

Of whom Andre Rice is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2014-002718

Appeal From Greenville County
Tarita A. Dunbar, Family Court Judge

Unpublished Opinion No. 2016-UP-129
Submitted February 2, 2016 – Filed March 3, 2016

**REVERSED AND REMANDED**

Brian P. Johnson, of The Law Office of Brian P. Johnson, LLC, of Greenville, for Appellant.

Deborah Murdock Gentry, of Murdock Law Firm, LLC, of Mauldin, for Respondent.

Don J. Stevenson, of Don J. Stevenson, Attorney at Law, of Greenville, for the Guardian ad Litem.

**PER CURIAM:** Andre Rice (Father) appeals the family court's termination of his parental rights to his minor daughter (Child). On appeal, Father argues the family court erred in (1) finding clear and convincing evidence supported termination of parental rights (TPR) on the grounds of abandonment and failure to support, (2) finding TPR was in Child's best interest, and (3) excluding testimony tending to prove Father was a fit parent. We reverse and remand.[1]

Ptia Patterson (Mother) gave birth to Child in late February 2013. That same day, Mother surrendered Child to a hospital pursuant to section 63-7-40 of the South Carolina Code (2010) (the Safe Haven Statute).[2] The Department of Social Services (DSS) assumed custody of Child and placed Child in a pre-adoptive home. In early March, DSS, pursuant to the Safe Haven Statute, published a notice regarding Child's abandonment "in a newspaper of general circulation in the area where the [hospital] that initially took [Child was] located" and filed a petition that alleged Child was abandoned.[3] In late April, DSS and Mother appeared for the permanency planning hearing. At some point during the hearing, Mother informed the family court Father could be Child's father and moved for a continuance to allow her time to hire counsel. The family court granted her motion.

On May 1, DSS contacted Father and informed him of Child's existence. Father submitted to DNA testing in late May to determine whether he was Child's father. In early June, the DNA test results confirmed Father was Child's father. However, instead of considering Father for custody by means of a home study or assessing

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

[2] The Safe Haven Statute provides a procedure for the care of an infant when the infant has been left at a safe haven—which includes a hospital, a law enforcement agency, a fire station, an emergency medical services station, or any staffed house of worship—"by a person who does not express an intent to return for the infant and the circumstances give rise to a reasonable belief that the person does not intend to return for the infant." S.C. Code Ann. § 63-7-40(A), (J)(2).

[3] *See* S.C. Code Ann. § 63-7-40(E)(1) (directing DSS to publish a notice that "state[s] the circumstances under which the infant was left at the safe haven, a description of the infant, and the date, time, and place of the permanency planning hearing" and "state that any person wishing to assert parental rights in regard to the infant must do so at the hearing").

relative placement for Child, DSS pursued TPR against Father. When Father realized he was not going to receive custody of Child, he hired counsel and filed a motion for custody. In late August, the family court held the permanency planning hearing, but it did not address Father's motion. DSS argued Father abandoned Child in part because Father did not register on the Responsible Father Registry.[4] In its subsequent order, the family court found Father had abandoned Child because Father "was in a position to know [Mother] was pregnant and made no effort to provide care for [Child]" and ordered a permanent plan of TPR and adoption for Child. In October, the family court heard Father's motion for custody and subsequently ordered him to start paying monthly child support beginning on October 11, 2013, and granted him one hour of supervised visitation per month. Sometime later, Father again filed for custody or in the alternative extended visitation. The family court denied Father's motion. The family court held the TPR hearing in September 2014. In its subsequent order, the family court held Father wilfully abandoned Child, Father wilfully failed to support Child, and TPR was in the best interest of Child.[5]

"Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing termination proceedings and termination is proper only when the evidence clearly and convincingly mandates such a result." *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006). On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 652 (2011).

The family court may order TPR when it finds one or more statutory grounds for TPR exist and termination is in the best interest of the child. S.C. Code Ann. § 63-7-2570 (Supp. 2015).

Initially, we find DSS's reliance on the Responsible Father Registry was misplaced. The Responsible Father Registry was established "to provide notice to unmarried

---

[4] S.C. Code Ann. § 63-9-820 (Supp. 2015).

[5] The family court also held Mother wilfully abandoned Child, Mother wilfully failed to support child, and TPR was in the best interest of Child. Mother did not appeal the family court's order.

biological fathers who affirmatively assume responsibility for children they may have fathered by registering with the Responsible Father Registry." S.C. Code Ann. § 63-9-810 (Supp. 2015). By filing a claim of paternity, registrants "preserve the right to notice of an adoption proceeding or the right to notice of a petition for [TPR]." S.C. Code Ann. § 63-9-820(C). Although the failure to register a claim "constitutes an implied irrevocable waiver of the father's right to notice of any proceedings pertaining to the termination of his parental rights and to the child's adoption," per section 63-9-820(D) of the South Carolina Code, it does not follow that the failure to file a claim with the registry is conduct that evinces a settled purpose to forego parental duties. *See Charleston Cty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 97, 627 S.E.2d 765, 771 (Ct. App. 2006) (defining willful conduct as "conduct that 'evinces a settled purpose to forego parental duties . . . because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent'" (quoting *S.C. Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 53, 413 S.E.2d 835, 838 (1992))). To determine whether Father wilfully deserted Child or wilfully failed to support Child, we must look to the facts of this specific case; the failure to file a claim with the Responsible Father Registry is not dispositive.

We find Father did not wilfully abandon Child because his actions show he provided for the care of Child once paternity was established. *See* S.C. Code Ann. § 63-7-2570(7) ("The family court may order [TPR] upon a finding . . . [t]he child has been abandoned as defined in [s]ection 63-7-20[(1) of the South Carolina Code (2010)]."); S.C. Code Ann. § 63-7-20(1) (defining abandonment of a child as "wilfully desert[ing] a child or wilfully surrender[ing] physical possession of a child without making adequate arrangements for the child's needs or the continuing care of the child"); *S.C. Dep't of Soc. Servs. v. Truitt*, 361 S.C. 272, 278, 603 S.E.2d 867, 871 (Ct. App. 2004) ("The willful standard for termination has been explained as 'a question of intent to be determined from the facts and circumstances of each individual case.'" (quoting *S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 610, 582 S.E.2d 419, 423 (2003))). DSS did not show Father knew he was Child's father prior to the paternity test in June 2013. At the TPR hearing, Mother testified that before the DNA test established paternity there was a question as to the identity of Child's father.[6] Once paternity was established, however, Father filed for custody of Child. When the family court denied his motion and ordered visitation, Father filed a second motion for custody, or in the

---

[6] Father testified he had a casual, open relationship with Mother. Father also testified he had two biological children by Mother and although those children lived with Mother, he was involved in their lives.

alternative, increased visitation.  Additionally, Father resigned from his position at his job in Orangeburg in order to move to Laurens to be near his family who would help him raise Child.  DSS testified that before every visitation, Father called DSS to see if Child needed anything in particular.  DSS acknowledged Father usually brought clothes, shoes, and diapers to visitation and on Child's birthday, Father brought Child birthday gifts.  Based on Father's actions to gain custody and provide for Child once paternity was established, we find clear and convincing evidence does not show Father wilfully abandoned Child.  *See* S.C. Code Ann. § 63-7-20(1) (defining abandonment of a child as "wilfully desert[ing] a child or wilfully surrender[ing] physical possession of a child without making adequate arrangements for the child's needs or the continuing care of the child").

We also find clear and convincing evidence does not show Father wilfully failed to support Child.  *See* S.C. Code Ann. § 63-7-2570(4) ("The family court may order [TPR] upon a finding . . . [t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child.").  Mother testified that until the DNA test established paternity, there was a question as to the identity of Child's father.  Because there was a question of paternity, we find Father's failure to pay child support prior to the time paternity was established could not be willful under the TPR statute.  *See Headden*, 354 S.C. at 612, 582 S.E.2d at 425 ("[T]he family court has wide discretion in determining whether a failure to support is [willful].").  Because Father began paying child support within six months of the date paternity was established, we find clear and convincing evidence does not prove this statutory ground.

We decline to address the best interests of Child because DSS did not prove a statutory ground by clear and convincing evidence.  *See* S.C. Code Ann. § 63-7-2570 ("The family court may order [TPR] upon a finding of one or more of the following grounds *and* a finding that termination is in the best interest of the child . . . ." (emphasis added)).

Based on our determination that clear and convincing evidence does not prove a statutory ground for TPR, we reverse and remand for a permanency planning hearing.  In reversing this case, we note that Mother's statutory abandonment of her newborn appropriately triggered DSS to file a court case to address the welfare and the future of Child.  However, the mistaken reliance on the Responsible Father Registry as a reason not to consider Father for custody through a home study or to otherwise offer to him the panoply of reunification services available is where the trajectory of this case went awry.  On remand, the family court should look to that moment in time when Mother gave up Child to consider Father or other members

of his family for custody of Child.  He has been a recognized father figure to his and Mother's other two children, and the record presents evidence of his ability and willingness to be considered a father for Child.

Regrettably, we are years along in the life of this blameless child, so we encourage all speed in reviewing that crucial moment when Father was given no consideration after Mother decided to abandon their child without his knowledge.[7]

**REVERSED AND REMANDED.**

**HUFF, A.C.J., KONDUROS, and GEATHERS, JJ., concur.**

---

[7] In light of our decision, we need not address whether the family court erred in excluding testimony.  *See S.C. Dep't of Soc. Servs. v. Mother*, 396 S.C. 390, 403 n.15, 720 S.E.2d 920, 926 n. 15 (Ct. App. 2011) ("In light of our decision, we need not address Mother's remaining issues on appeal.").